**MCCARTER & ENGLISH, LLP**
Margarita Wallach
Irene M. Hurtado
Worldwide Plaza
825 Eighth Avenue, 31st Floor
New York, New York 10019
(212) 609-6800
mwallach@mccarter.com
ihurtado@mccarter.com
Attorneys For Plaintiffs

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------- x

SAMSONITE IP HOLDINGS S.àr.l. and
SPECULATIVE PRODUCT DESIGN, LLC,

              Plaintiffs,

           - against -

SHENZHEN LIANGYIYOU E-COMMERCE
CO., LTD. a/k/a SHENZHEN LIANGYIYOU
ELECTRONIC COMMERCE CO., LTD. a/k/a
SHENZHEN CITY LIANGYIYOU E-
COMMERCE LIMITED COMPANY a/k/a
SHENZHEN CITY LIANGYIYOU
ELECTRONIC COMMERCE LIMITED
COMPANY d/b/a LIOEO, d/b/a LIOEO US, d/b/a
LIO US, and JOHN AND JANE DOES A-Z
(UNIDENTIFIED); and XYZ COMPANIES 1-10
(UNIDENTIFIED),

              Defendants.

----------------------------------------------------------- x

Civil Action No.  19-cv-2564

**COMPLAINT**

      Plaintiffs Samsonite IP Holdings S.àr.l. ("Samsonite") and Speculative Product Design,

LLC ("Speck") (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for

their complaint against Defendant Shenzhen Liangyiyou E-commerce Co., Ltd. a/k/a Shenzhen

Liangyiyou Electronic Commerce Co., Ltd. a/k/a Shenzhen City Liangyiyou E-Commerce

Limited Company  a/k/a Shenzhen City Liangyiyou Electronic Commerce Limited Company

d/b/a Lioeo, d/b/a Lioeo US, d/b/a LIO US ("SLEC"), John and Jane Does A-Z (unidentified), and XYZ Companies 1-10 (unidentified) (collectively, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action to put an end to Defendants' unlawful manufacture, sale and distribution of infringing copies of Plaintiffs' successful iGuy® brand protective carrying cases for portable computers, portable media players, and tablet computers, depicted below:



(the "iGuy® Case").

2.      Plaintiffs seek injunctive and monetary relief for acts of federal copyright infringement under the United States Copyright Act, 17 U.S.C. § 101, *et seq.*, including damages pursuant to the Digital Millennium Copyright Act (the "DMCA"), 17 U.S.C. § 512(f), trademark infringement, unfair competition, and deceptive trade practices under the Lanham Act, Title 15, United States Code § 1051, *et seq.*, and the statutes and common laws of the State of New York.

## JURISDICTION AND VENUE

3.      This is a civil action arising under the U.S. Copyright Act, 17 U.S.C. §101, *et. seq.*, and the Lanham Act of the United States, 15 U.S.C. §1051, *et seq.*, and subject matter

jurisdiction is conferred on this Court under 15 U.S.C. §1121, 28 U.S.C. §1332, 28 U.S.C. §§1338 (a) and (b), and 28 U.S.C. § 1367.

4.     This Court has personal jurisdiction over SLEC because SLEC transacts business within the Southern District of New York and has sufficient minimum contacts with the State of New York.  In addition to transacting business within the District, SLEC submitted various counter-notifications pursuant to the DMCA, as discussed below, to Amazon.com and, in doing so, SLEC agreed, as required by the DMCA, to submit to the jurisdiction of the federal district court in any judicial district in which Amazon.com can be found.  On its website, Amazon.com states that it has offices in New York, New York.

5.     Venue is proper in this District pursuant to 28 U.S.C. §§1391(b) and (c). Defendants market and offer their products for sale via Amazon.com and import and distribute those products in interstate commerce and within the Southern District of New York, and based upon the submission to jurisdiction included in each of the counter-notifications submitted by SLEC to Amazon.com.

## THE PARTIES

6.     Plaintiff Samsonite is a société à responsabilité limitée (private limited liability company) governed by the laws of the Grand-Duchy of Luxembourg, having its registered office at 13-15 Avenue de la Liberté, L-1931 Luxembourg, registered with the Luxembourg Register of Commerce and Companies (Registre de Commerce et des Sociétés, Luxembourg) under number B 147.735.

7.     Plaintiff Speck is a limited liability company organized and existing under the laws of the State of California, having its principal place of business at 177 Bovet Road, Suite 200, San Mateo, California 94402.

ME1 29906234v.1

8.      Upon information and belief, SLEC is a corporation duly organized and existing under the laws of the People's Republic of China, with an address of 18C Building/Block B, No.1 Haishan Road, Haishan Street, Yantian District. Shenzhen City, Guangdong  China 51808. Upon further information and belief, SLEC also has an address of 1 Broadway Rd., Ste. 1. # LIOE Ste. 1. #1211, Cranbury, New Jersey 08512.

9.      Upon information and belief, Defendants identified as various JOHN DOES and JANE DOES are various individuals and entities conducting business at various locations in the State of New York and elsewhere who are acting in concert with SLEC and engaging in infringing conduct, including but not limited to manufacturing, importing, distributing, warehousing, or selling SLEC's infringing tablet cases in this District and throughout the United States, and are present in and/or doing business in the State of New York and subject to the jurisdiction of this Court.  The identities of the various JOHN DOES and JANE DOES defendants are not presently known and the Complaint herein will be amended to include the name or names of these individuals when such information becomes available (each a "Doe" and collectively "Does").

10.     Upon information and belief, Defendants, the XYZ COMPANIES, through their agents, servants, and employees, are conducting business at various locations in the State of New York and elsewhere and are acting in concert with SLEC and engaging in infringing conduct, including but not limited to manufacturing, importing, distributing, warehousing, or selling SLEC's infringing tablet cases in this District and throughout the United States, and are present in and/or doing business in the State of New York and subject to the jurisdiction of this Court (each a "Defendant Company" and collectively, "Defendant Companies").

4

**PLAINTIFFS' BUSINESS**

11.     Speck is one of the leading designers of protective cases for portable electronic devices including smartphones, laptops and tablets, including the iGuy® Case.

12.     Samsonite is the owner of, and Speck is the worldwide licensee of certain rights of copyright and trade dress in and to the packaging and design of Plaintiffs' iGuy® Cases.

13.     Among Samsonite's most important assets are the intellectual property rights it owns, specifically its rights in and to the unique and inherently distinctive designs used on and in connection with the iGuy® Cases and the packaging therefor.  Such designs, which are subject to copyright and/or trade dress protection, include the original and inherently distinctive design, shape and overall appearance of the iGuy® Cases and the package insert for the iGuy® Cases.

**THE COPYRIGHTED DESIGNS**

14.     Samsonite owns U.S. copyright registrations covering the unique and innovative designs that it uses on and in connection with its iGuy® brand products.

15.     Among the U.S. copyright registrations owned by Samsonite covering the original and distinctive design of the iGuy® brand tablet case and the packaging therefor are the following:

> (a) U.S. Copyright Registration No. VA2-036-476, registered on June 15, 2016 for the design of the iGuy® Cases (the "iGuy® Design").  A copy of the registration certificate for the design of the iGuy® Cases, along with photographs of that design, is attached hereto as **Exhibit A**.
>
> (b) U.S. Copyright Registration No. VA 2-036-473, registered on June 16, 2016, for the packaging insert for iGuy® brand tablet case (the "iGuy® Insert").  A

5

copy of the registration certificate for the iGuy® Insert, along with a

photograph of that design, is attached hereto as **Exhibit B**.

16.     The foregoing copyrighted works shall hereinafter be referred to collectively as

the "Samsonite Copyrights."

17.     Samsonite owns all right, title and interest in and to the Samsonite Copyrights,

which constitute original and copyrightable subject matter under the U.S. Copyright Act.

18.     Samsonite has duly complied with all relevant requirements of the U.S. Copyright

Act with respect to the Samsonite Copyrights.

### THE iGUY® TRADE DRESS

19.     Samsonite also own trade dress rights in and to the unique and inherently

distinctive configuration and design of the iGuy® Case (the "iGuy® Case Trade Dress").  The

iGuy® Case Trade Dress consists of the following combination of design elements:  a

rectangular shaped cover, resembling a human, with a rectangular orifice for insertion of a tablet,

with two oblong protrusions at the base of the rectangular body of the case that resemble human

legs, and conical, elongated protrusions, extending from each side of the cover that resemble

arms.

20.     In addition, the packaging for the iGuy® Cases includes a white cardboard insert

that fits within the rectangular orifice intended for insertion of a tablet and features a stylized

winking "smiley face" (the "iGuy® Packaging Trade Dress").  The iGuy® Case Trade Dress and

the iGuy® Packaging Trade Dress are referred to collectively herein as the "iGuy® Trade Dress"

and are depicted in **Exhibit C** hereto.

21.     The iGuy® Trade Dress has been in use by Plaintiffs since at least as early as

2011.  In addition to being, in and of itself, inherently distinctive, as a result of broad media

exposure, and the uninterrupted and continuing promotion and sale of products bearing the iGuy® Trade Dress, the iGuy® Trade Dress has also acquired distinctiveness, and has developed a strong secondary meaning among consumers and the trade, such that consumers immediately identify Samsonite as the exclusive source of products bearing the iGuy® Trade Dress, signifying goodwill of incalculable value.

22.     The iGuy® Cases generate considerable revenues for Plaintiffs.  The iGuy® Cases bearing the iGuy® Trade Dress have enjoyed substantial sales success.

23.     During this same period, Plaintiffs have extensively advertised and marketed products bearing the iGuy® Trade Dress primarily at trade shows, in print media, and through Plaintiffs' website and social media accounts.

24.     As a result of the long and continuous sale and promotion throughout the United States of products featuring the inherently distinctive iGuy® Trade Dress, consumers of protective cases for electronic devices have come to associate the iGuy® Trade Dress as signifying high-quality products originating from Samsonite.  Indeed, in 2012, the  iGuy® Cases received the Tablet2Cases Golden Case Awards winner for Best Case for Kids.

25.     The iGuy® Trade Dress is not functional.  The various design elements, while serving to create a unique and distinct appearance that is both visually appealing and source-identifying, are not essential to the use or purpose of a tablet case, do not affect the cost or quality of the tablet cases, and place no competitors at a significant non-reputation-related disadvantage.

26.     The Samsonite Copyrights and the iGuy® Trade Dress are hereinafter collectively referred to as the "Samsonite's Protected Designs."

7

## DEFENDANTS' UNLAWFUL ACTS

27.     Upon information and belief, Defendants are in the business of designing, manufacturing, importing, warehousing, distributing, offering for sale and/or selling various products, including covers for tablets, via Amazon.com throughout the United States and via SLEC's website, www.lioeoglobal.com.

28.     Upon information and belief, long after Samsonite obtained exclusive rights in Samsonite's Protected Designs, Defendants deliberately designed, manufactured, imported, advertised, promoted, purchased, distributed, sold and/or offered for sale, without authorization or license from Plaintiffs, infringing products bearing designs that are identical, substantially similar and indistinguishable from, and confusingly similar to Samsonite's Protected Designs (the "Infringing Products"), as depicted below in the side-by-side comparison and in **Exhibit D** hereto (the "Infringing Case Design").  Indeed, Defendants have so faithfully reproduced the design of the distinctive iGuy® Case that the Infringing Products are indistinguishable from the iGuy® Cases.  The Infringing Case Design, like Plaintiffs' protected design for the iGuy® Cases, features a rectangular shaped cover, resembling a human, with a rectangular orifice for insertion of a tablet, with two oblong protrusions at the base of the rectangular body of the case that resemble human legs, and conical, elongated protrusions, extending from each side of the cover that resemble arms (the "Infringing Case Trade Dress"):

ME1 29906234v.1

**Plaintiffs' iGuy® Case Trade Dress:**          **The Infringing Case Trade Dress:**

          

29.    In addition, the packaging for its Infringing Products includes a white cardboard insert that fits within the orifice intended for insertion of a tablet and features a stylized, winking "smiley face" (the "Infringing Insert"), depicted in **<u>Exhibit E</u>** hereto, that is identical and substantially similar to that featured in the iGuy® Insert:

**Plaintiffs' iGuy® Insert:**                    **The Infringing Insert:**

                    

ME1 29906234v.1

30.   The Infringing Products are of lesser quality and are priced substantially lower than Plaintiffs' iGuy® Cases.  Notably, Plaintiffs' iGuy® cases retail for $39.99, while on information and belief the Infringing Products retail for as low as $12.99.

31.   As a result, in addition to unlawfully copying and misappropriating Samsonite's Protected Designs, the Infringing Products are likely to cause consumers, either at the point-of-sale or post-sale, to mistakenly believe that the Infringing Products are authorized, sponsored, approved, endorsed and/or licensed by Plaintiffs, or are in some other way affiliated, associated, or connected with Plaintiffs.

32.   Upon information and belief, Defendants were aware of the fact that Samsonite's Protected Designs are original creations of Samsonite at the time that Defendants first designed, manufactured, imported, offered for sale, and/or sold the Infringing Products.

33.   Upon information and belief, images that depict the Infringing Products and infringe upon Samsonite's copyright in the iGuy® Design are also displayed on SLEC's website, www.lioeo.com, as depicted in Exhibit D hereto.

34.   In addition, Plaintiffs, upon discovering Defendants' infringing conduct and sale of the Infringing Products on Amazon.com, submitted multiple Notices of Infringement to Amazon.com, pursuant to and in full compliance with the DMCA, identifying various listings maintained by SLEC that offered the Infringing Products for sale (the "Infringing Listings") and requesting that Amazon.com disable access to the Infringing Listings.  A chart identifying Notices of Infringement submitted by Plaintiffs is attached hereto as **Exhibit F**.

35.   In response, SLEC has submitted multiple false and fraudulent Counter-Notifications to Amazon.com.  In each of its false Counter-Notifications, SLEC knowingly made material misrepresentations to Amazon.com, falsely stating that the Infringing Listings were

removed or disabled as a result of mistake or mis-identification and that the products offered by SLEC do not infringe Samsonite's Protected Designs.

36.     Specifically, SLEC made misrepresentations to the effect that the products reflected in the Infringing Listings did not infringe Plaintiffs' rights of copyright and that SLEC had the lawful right to distribute and sell its Infringing Products, pursuant to a license to an unidentified Chinese design patent and based upon SLEC's ownership of a trademark registration in the United States for the word mark LIOEO.

37.     To the extent that SLEC does in fact hold a license pursuant to a Chinese design patent embodying the case design at issue, such patent is, upon information and belief, invalid.

38.     SLEC's reliance upon its registration for the LIOEO word mark is irrelevant and has no bearing upon the validity of Plaintiffs' Notices of Infringement, which are premised solely upon Plaintiffs' rights of copyright in and to the iGuy® Case Design.

39.     Upon receipt of such Counter-Notifications, Amazon.com has restored access to the Infringing Listings.  This process of repeated submission of Notices of Infringement by Plaintiffs and corresponding submission of false Counter-Notifications by SLEC has occurred multiple times, with Amazon.com restoring access to the Infringing Listings in reliance upon SLEC's false Counter-Notifications.

40.     Plaintiffs submitted a Notice of Infringement on February 6, 2019.  In response, SLEC submitted a Counter-Notification on March 7, 2019, which is attached hereto as **Exhibit G**.  On March 1, 2019, Plaintiff submitted another Notice of Infringement concerning listings depicting Infringing Products, but to date, SLEC has not yet submitted a Counter-Notification in response to the March 1, 2019 Notice of Infringement.

41.     Accordingly, upon information and belief, Defendants have been engaging in the

11

above-described unlawful activities knowingly and intentionally, or with reckless disregard for Samsonite's rights in and to Samsonite's Protected Designs.

42.    Upon information and belief, Defendants are manufacturing, sourcing, purchasing, supplying, importing, distributing, advertising, promoting, offering for sale and/or selling, and/or are causing to be manufactured, imported, purchased, supplied, distributed, advertised, promoted, offered for sale and/or sold, without authorization or license, the Infringing Products, which are of inferior quality, at prices substantially below the retail prices at which Plaintiffs' iGuy® Cases are sold, in an effort to induce consumers into thinking either that they are purchasing Plaintiffs' iGuy® Cases, or in the hope that the Infringing Products will appear to consumers to be Plaintiffs' genuine products.

43.    Upon information and belief, the Infringing Products are also listed for sale on Amazon's platforms in India, Italy, Japan and Canada.

44.    Upon information and belief, Defendants intend to continue to manufacture, import, purchase, distribute, advertise, promote, offer for sale and/or sell the Infringing Products, unless otherwise restrained by this Court.

45.    Unless Defendants' conduct is enjoined, such conduct will diminish the value of Samsonite's valuable intellectual property rights, and severely inhibit and/or destroy the ability of Samsonite's Protected Designs to identify Samsonite as the exclusive source of goods to which they are affixed.

## FIRST CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)
## (AGAINST ALL DEFENDANTS)

46.    The allegations set forth in paragraphs 1 through 45 hereof are adopted and incorporated by reference as if fully set forth herein.

12

47.    Samsonite is the owner of and Speck is the worldwide licensee of the copyright registrations for the iGuy® Design and the iGuy® Insert.

48.    Defendants, without authorization from Plaintiffs, have reproduced, designed, manufactured, supplied, imported, purchased, advertised, promoted, distributed, sold and/or offered for sale products and packaging that are slavishly copied from and are substantially similar in overall appearance to the iGuy® Design and the iGuy® Insert, and are displaying images of the Infringing Products on SLEC's website, www.lioeoglobal.com.

49.    Defendants thereby have willfully infringed and, upon information and belief, continue to willfully infringe Samsonite's copyright registrations for the iGuy® Design and the iGuy® Insert.

50.    Upon information and belief, by their acts, Defendants have made and will continue to make substantial profits and gains to which they are not in law or in equity entitled.

51.    Upon information and belief, Defendants intend to continue their willful conduct, and will continue to willfully infringe Samsonite's copyright registrations for the iGuy® Design and the iGuy® Insert and to act in bad faith, unless restrained by this Court.

52.    The acts of Defendants have damaged and will continue to irreparably damage Plaintiffs, and Plaintiffs have no adequate remedy at law.

<u>**SECOND CLAIM FOR RELIEF**</u>
<u>**VIOLATION OF DMCA (17 U.S.C. § 512(f))**</u>
<u>**(AGAINST SLEC)**</u>

53.    The allegations set forth in paragraphs 1 through 52 hereof are adopted and incorporated by reference as if fully set forth herein.

54.    SLEC knowingly made material misrepresentations in each of the Counter-Notifications submitted by SLEC to Amazon.com, including but not limited to the Counter-

ME1 29906234v.1

Notifications attached as Exhibit G hereto.

55.    Specifically, SLEC made misrepresentations to the effect that the products reflected in the Infringing Listings did not infringe Plaintiffs' rights of copyright and that SLEC had the lawful right to distribute and sell its Infringing Products, pursuant to a license to an unidentified Chinese design patent and based upon SLEC's ownership of a trademark registration in the United States for the word mark LIOEO.

56.    To the extent that SLEC does in fact hold a license pursuant to a Chinese design patent embodying the case design at issue, such patent is, upon information and belief, invalid.

57.    SLEC's reliance upon its registration for the LIOEO word mark is irrelevant and has no bearing upon the validity of Plaintiffs' Notices of Infringement, which are premised solely upon Samsonite's rights of copyright in and to the iGuy® Design.

58.    Plaintiffs have been damaged as a result of Amazon.com's reliance upon SLEC's repeated material misrepresentations in each of the Counter-Notifications submitted by SLEC.

59.    As a result, Plaintiffs are entitled to an award of damages, including all costs and attorneys' fees incurred by Plaintiffs, including the costs and fees associated with this action, as a result of SLEC's material misrepresentations in its Counter-Notifications.

### THIRD CLAIM FOR RELIEF
### TRADE DRESS INFRINGEMENT (15 U.S.C. § 1125(a))
### (AGAINST ALL DEFENDANTS)

60.    The allegations set forth in paragraphs 1 through 59 hereof are adopted and incorporated by reference as if fully set forth herein.

61.    The iGuy® Trade Dress is inherently distinctive, non-functional, and serves to identify Plaintiffs and their leading brand of protective tablet cases.

62.    In addition, the iGuy® Trade Dress has acquired secondary meaning and

14

distinctiveness in light of Plaintiffs' substantial marketing efforts, customer identification of Plaintiffs' iGuy® Cases with a particular, single source, and the length of use of the iGuy® Trade Dress as identifying Samsonite as the source of this particular high quality line of protective tablet cases.

63.    By virtue of use of the distinctive and non-functional iGuy® Trade Dress, through its worldwide licensee, Speck, Samsonite is the owner at common law of the iGuy® Trade Dress in connection with protective tablet cases.  Samsonite has established valuable good will in the iGuy® Trade Dress.

64.    The Infringing Case Trade Dress used in connection with the Infringing Products and the design depicted on the Infringing Insert so closely resembles the iGuy® Trade Dress that it is likely to cause confusion, mistake or deception.  Such use is likely to cause persons to believe, contrary to fact, that the business and products of Defendants originate with, are sponsored by, or are associated with Plaintiffs, thereby infringing the iGuy® Trade Dress and diminishing and impairing Samsonite's good will in the iGuy®Trade Dress.

65.    Defendants' acts of infringement are willful and intentional.

66.    Plaintiffs have suffered and will continue to suffer immediate and irreparable harm as a result of the promotion, use and sale of the Infringing Products.

**FOURTH CLAIM FOR RELIEF**
**FEDERAL UNFAIR COMPETITION (15 U.S.C. §1125(a))**
**(AGAINST ALL DEFENDANTS)**

67.    The allegations set forth in paragraphs 1 through 66 hereof are adopted and incorporated by reference as if fully set forth herein.

68.    Defendants' use of a product design and a packaging that infringe the iGuy® Trade Dress in connection with their goods is in violation of 15 U.S.C. §1125 in that such use is likely

15

to cause confusion, to cause mistake, or to deceive persons as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' Infringing Products or commercial activities by Plaintiffs.

69.     Defendants' unauthorized use of a product design and packaging that is identical and confusingly similar to the iGuy® Trade Dress constitutes violations of 15 U.S.C. §1125. Such acts constitute (a) a false designation of origin, (b) a false or misleading description of fact and/or (c) a false and misleading representation of fact resulting in unfair competition with Plaintiffs in that such conduct is likely to cause confusion, mistake or deception, contrary to fact, that the business and products of Defendants are sponsored by, endorsed by or emanate from Plaintiffs or otherwise are connected with Plaintiffs.  Such use, therefore, causes irreparable damage and harm to Samsonite's goodwill in the iGuy® Trade Dress.

70.     Defendants' wrongful and infringing conduct is willful and intentional.

71.     Defendants' wrongful and infringing conduct has caused and will continue to cause Plaintiffs to suffer damage and injury to their business, reputation and goodwill and to sustain substantial loss of revenues and profits.

72.     Unless enjoined by this Court, Defendants will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of Plaintiffs.  Plaintiffs have no adequate remedy at law for Defendants' wrongful acts.

**FIFTH CLAIM FOR RELIEF**
**DECEPTIVE ACTS AND PRACTICES UNDER NEW YORK GENERAL BUSINESS**
**LAW §§ 349 AND 350**
**(AGAINST ALL DEFENDANTS)**

73.     The allegations set forth in paragraphs 1 through 72 hereof are adopted and incorporated by reference as if fully set forth herein.

74.     Samsonite enjoys well-established common law rights in and to the iGuy® Trade

16

Dress in the State of New York, which rights are superior to any rights that Defendants may claim, and Samsonite has built significant goodwill in the iGuy® Trade Dress.

75.    The iGuy® Trade Dress is inherently distinctive, non-functional, and serves to identify Samsonite and its licensee, Speck's leading brand of protective tablet cases.

76.    In addition, the iGuy® Trade Dress has acquired secondary meaning and distinctiveness in light of Plaintiffs' substantial marketing efforts, customer identification of the iGuy® Cases with a particular, single source, and the length of use of the iGuy® Trade Dress as identifying Samsonite as the source of this particular high quality line of protective tablet cases.

77.    Plaintiffs first adopted and used the iGuy® Trade Dress as a means of establishing goodwill and reputation and to describe, identify or denominate particular goods offered by Plaintiffs and to distinguish them from similar goods offered by others.  As a result, the iGuy® Trade Dress has acquired secondary meaning.

78.    Defendants have used, in connection with the sale of their Infringing Products, a product design and packaging that is identical or confusingly similar to the iGuy® Trade Dress and which is likely to cause and/or has caused confusion or mistake as to the source, affiliation, connection or association of Defendants' products in that consumers thereof are likely to associate or have associated such products as originating with Samsonite, all to the detriment of Plaintiffs.

79.    Through the advertisement, offer to sell and/or sale of the Infringing Products bearing a design and packaging that infringe the iGuy® Trade Dress,  Defendants have engaged in consumer-oriented conduct that has directly and/or indirectly affected the public interest of New York and has resulted in injury to consumers of New York.

80.    Defendants' acts as complained of herein are materially misleading to a substantial

17

portion of the consuming public and have deceived and/or are likely to deceive a material

segment of the consuming public to whom Defendants have directed Defendants' products and

such acts have cause injury to Plaintiffs.

81.    Through the acts complained of herein, Defendants have willfully engaged in

deceptive acts or practices in the conduct of business and the furnishing of Defendants' products

in violation of Section 349 and 350 of the New York General Business Law.

82.    Plaintiffs have no adequate remedy at law.

83.    Plaintiffs have suffered and continue to suffer economic loss directly and

proximately caused by Defendants' actions alleged herein.

### SIXTH CLAIM FOR RELIEF
### TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER NEW YORK STATE COMMON LAW
### (AGAINST ALL DEFENDANTS)

84.     The allegations set forth in paragraphs 1 through 83 hereof are adopted and

incorporated by reference as if fully set forth herein.

85.    Samsonite enjoys well-established common law rights in and to the iGuy® Trade

Dress in the State of New York, which are superior to any rights that Defendants may claim, and

Samsonite has built significant goodwill in the iGuy® Trade Dress.

86.    Defendants used, in connection with the sale of their Infringing Products, a design

and a packaging that are identical to or confusingly similar to the iGuy® Trade Dress and which

are likely to cause and/or have caused confusion or mistake as to the source, affiliation,

connection or association of Defendants' products in that consumers thereof are likely to

associate or have associated such products as originating with Plaintiffs, all to the detriment of

Plaintiffs.

87.    Defendants' acts complained of herein constitute trademark infringement and unfair

18

competition under the laws of the state of New York.

88.    Defendants have been unjustly enriched and have damaged Plaintiffs' business, reputation, and goodwill.

89.    Upon information and belief, Defendants' conduct is intentional, with knowledge, and in bad faith, entitling Plaintiffs to increased damages and attorneys' fees.

90.    Defendants' acts, as complained of herein, have caused irreparable injury and damage to Plaintiffs and, unless restrained, will continue to do so.

91.    Plaintiffs have no adequate remedy at law.

92.    Plaintiffs have suffered and continue to suffer economic loss directly and proximately caused by Defendants' actions alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1.    That Defendants, and all persons acting in concert or participating with Defendants, be permanently enjoined from:

(a)    Reproducing, publishing, distributing, or selling any products, including but not limited to the Infringing Products, and any product packaging, that copies, reproduces, incorporates, or replicates the iGuy® Design, the iGuy® Insert, or any portion thereof, or otherwise infringes the Samsonite Copyrights;

(b)    Using in any manner the iGuy® Trade Dress, the Infringing Case Trade Dress, the Infringing Insert, or any other trade dress that is confusingly similar to the iGuy® Trade Dress, including, but not limited to, selling, offering for sale, displaying, promoting or advertising products bearing the iGuy® Trade Dress, the Infringing Case Trade Dress, the Infringing Insert, or any other confusingly similar trade dress;

19

(c)  Depicting the Infringing Products, the Infringing Case Trade Dress and the Infringing Insert on SLEC's website, www.lioeoglobal.com, or on any other website and/or social media accounts owned, controlled or maintained by any of the Defendants;

(d)  Passing off, inducing, or enabling others to sell or pass off any products that do not emanate from Plaintiffs or that are not distributed under the control and supervision of Plaintiffs and approved by Plaintiffs for sale bearing the iGuy® Trade Dress, the Infringing Case Trade Dress, the Infringing Insert, or any other confusingly similar trade dress, as products distributed by or with the approval of Plaintiffs;

(e)  Committing any act calculated to cause purchasers to falsely believe that Defendants' products are those sold under the control and supervision of Plaintiffs, are sponsored, approved or connected with, guaranteed, warranted, or produced under the control and supervision of Plaintiffs;

(f)  Shipping, importing, delivering, distributing, returning, or otherwise disposing of in any manner products or inventory bearing the iGuy® Trade Dress, the Infringing Case Trade Dress, the Infringing Insert, or any trade dress that is confusingly similar to the iGuy® Trade Dress;

(g)  Further infringing the iGuy® Trade Dress and damaging Samsonite's goodwill and Plaintiffs' business reputation;

(h)  Otherwise competing unfairly with Plaintiffs in any manner; and

(i)  Continuing to perform in any manner whatsoever any act deemed contrary to law by this Court.

ME1 29906234v.1

2.    That Plaintiffs be awarded such damages as they have sustained as a result of Defendants' infringement of the Samsonite Copyrights, as well as Defendants' profits attributable to their unlawful acts in violation of the Samsonite Copyrights.  17 U.S.C. § 504(b).

3.    That all listings on Amazon.com for the Infringing Products be permanently disabled.

4.    That Defendants immediately remove all images depicting the Infringing Products, the Infringing Case Trade Dress and the Infringing Insert from all websites, including but not limited to www.lioeoglobal.com, all social media accounts, and all other advertising or promotional materials, whether in print or electronic form.

5.    That Plaintiffs be awarded such damages, including costs and attorneys' fees, incurred by Plaintiffs as a result of SLEC's knowing and material misrepresentations in each of the Counter-Notifications submitted by SLEC to Amazon.com.  17 U.S.C. § 512(f).

6.    That Defendants be ordered to provide an accounting of all revenue generated from their use of the Infringing Case Trade Dress and the Infringing Insert, and to pay Plaintiffs all profits realized by Defendants by reason of their unlawful acts as set forth in this Complaint.  15 U.S.C. § 1117(a).

7.    That Defendants be ordered to pay Plaintiffs all damages suffered by Plaintiffs by reason of Defendants' trade dress infringement, unfair competition, and false designation of origin, as set forth in this Complaint.  15 U.S.C. § 1117(a).

8.    That the Court award Plaintiffs three times the damages suffered by reason of the intentional, unlawful acts of Defendants as set forth in this Complaint.  15 U.S.C. § 1117(a).

9.    That Defendants be required to file with the Court and serve on the undersigned counsel for Plaintiffs, within thirty (30) days after the entry of judgment, a written report under

21

oath setting forth in detail the manner in which Defendants have complied with the injunction ordered by this Court.  15 U.S.C. § 1116.

       10.    That this case be declared exceptional, and that Defendants be ordered to pay Plaintiffs, the prevailing party, the costs of this action, filing fees, and their reasonable attorneys' fees.  15 U.S.C. § 1117(a).

       11.    That Plaintiffs shall have other such relief as this Court may deem just and proper.

Dated: March 21, 2019

**McCARTER & ENGLISH, LLP**

By:    s/Margarita Wallach      
       Margarita Wallach
       Irene M. Hurtado

Worldwide Plaza
825 Eighth Avenue, 31st Floor
New York, New York 10019
Tel.: (212) 609-6800
mwallach@mccarter.com
ihurtado@mccarter.com

Attorneys for Plaintiffs

22

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand trial by jury on all issues.

Dated: March 21, 2019

**McCARTER & ENGLISH, LLP**

By:     s/Margarita Wallach
         Margarita Wallach
         Irene M. Hurtado

Worldwide Plaza
825 Eighth Avenue, 31st Floor
New York, New York 10019
Tel.: (212) 609-6800
mwallach@mccarter.com
ihurtado@mccarter.com

Attorneys for Plaintiffs

ME1 29906234v.1