UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAMSONITE IP HOLDINGS S.àr.l. and SPECULATIVE PRODUCT DESIGN, LLC,

Plaintiffs,

- against -

SHENZHEN LIANGYIYOU E-COMMERCE CO., LTD. a/k/a SHENZHEN LIANGYIYOU ELECTRONIC COMMERCE CO., LTD. a/k/a SHENZHEN CITY LIANGYIYOU ECOMMERCE LIMITED COMPANY a/k/a SHENZHEN CITY LIANGYIYOU ELECTRONIC COMMERCE LIMITED COMPANY d/b/a LIOEO, d/b/a LIOEO US, d/b/a LIO US, and JOHN AND JANE DOES A-Z (UNIDENTIFIED); and XYZ COMPANIES 1-10 (UNIDENTIFIED),

Defendants.

**ORDER**

19 Civ. 2564 (PGG) (VF)

PAUL G. GARDEPHE, U.S.D.J.:

In this action, Plaintiffs Samsonite IP Holdings S.àr.l. ("Samsonite") and Speculative Product Design LLC ("Speck") allege violations of the Copyright Act, 17 U.S.C. § 501; the Digital Millenium Copyright Act, 17 U.S.C. § 512(f); the Lanham Act, 15 U.S.C. § 1125(a); the New York General Business Law, §§ 349-350; and New York common law. (Second Amended Complaint ("SAC") (Dkt. No. 18)) Plaintiff Samsonite is the owner – and Plaintiff Speck is the worldwide licensee – of copyrights and trade dress regarding the packaging and design of iGuy portable electronic device cases. (Id. at ¶¶ 11-12) Plaintiffs allege that Defendant Shenzhen Liangyiyou E-Commerce Co., Ltd., a/k/a Shenzhen Liangyiyou Electronic Commerce Co., Ltd., a/k/a Shenzhen City Liangyiyou E-Commerce Limited Company, a/k/a Shenzhen City Liangyiyou Electronic Commerce Limited Company, d/b/a Lioeo, d/b/a Lioeo

US, d/b/a LIO US ("Shenzhen") "deliberately designed, manufactured, imported, advertised, promoted, purchased, distributed, sold and/or offered for sale, without authorization or license from Plaintiffs, infringing products" that were "identical, substantially similar and indistinguishable from, and confusingly similar to" Plaintiffs' iGuy design. (Id. ¶ 28)

On November 4, 2019, this Court entered a default judgment and permanent injunction against Defendant Shenzhen (See Order of Default and Permanent Injunction (Dkt. No. 37)) and referred this case to the assigned magistrate judge for an inquest on damages. (See id. at 3; Order of Reference (Dkt. No. 38)) Magistrate Judge Debra C. Freeman has issued a Report and Recommendation ("R&R") regarding the appropriate amount of damages. (R&R (Dkt. No. 47)) Plaintiffs have objected in part. (Pltf. Obj. (Dkt. No. 49))

This Court will adopt Judge Freeman's R&R as set forth below.

## BACKGROUND[1]

The Clerk of Court issued a certificate of default against Defendant on July 10, 2019 (Cert. of Default (Dkt. No. 27)), and this Court ordered Defendant to show cause on August 19, 2019, why a default judgment should not be entered against it. (Order (Dkt. No. 28) at 1) Defendant did not file an opposition to Plaintiffs' motion for a default judgment and did not appear on the hearing date. (See Order of Default (Dkt. No. 37) at 2-3) Accordingly, this Court entered a default judgment against Defendant and referred this case to Judge Freeman for an inquest on damages. (Id. at 3; Order of Reference (Dkt. No. 38))

---

[1] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

## I. MAGISTRATE JUDGE FREEMAN'S REPORT & RECOMMENDATION

On February 28, 2020, Judge Freeman directed Plaintiff to file proposed findings of fact and conclusions of law and an inquest memorandum (Order (Dkt. No. 41) at 2), and gave the following instructions concerning those submissions:

> Plaintiffs' Proposed Findings should specifically tie their proposed damages figure(s) to the legal claim(s) on which liability has now been established; should demonstrate how Plaintiffs arrived at the proposed damages figure(s); and should be supported by a sworn affidavit, or a declaration under penalty of perjury, that attaches as exhibits and contains an explanation of any documentary evidence that helps establish the proposed damages.

(Id. at 2) Judge Freeman also directed that, "to the extent Plaintiffs seek attorneys' fees and litigation costs," Plaintiffs should submit "copies of their attorneys' contemporaneous time records," "address the reasonableness of the hourly rates of the attorneys . . . and their support staff," and "provide copies of invoices or other documentation substantiating the amount of costs that have been incurred." (Id.)

In a March 31, 2020, submission, Plaintiffs requested $150,000 in Copyright Act statutory damages; $3,136,090.86 in treble damages pursuant to the Lanham Act – a sum premised on three times Defendant's profits; $142,387.06 in attorneys' fees; $13,543.23 in costs; pre-judgment interest; and post-judgment interest. (See Pltf. Br. (Dkt. No. 43) at 10, 15-20; March 31, 2020 Wallach Decl. (Dkt. No. 44); Purcell Decl. (Dkt. No. 45))

On April 27, 2021, Judge Freeman issued an R&R recommending that this Court award Plaintiffs: (1) $150,000 under the Copyright Act for statutory damages; (2) $1,045,363.62 under the Lanham Act as disgorgement of Defendant's profits; (3) $56,132.62 in attorneys' fees; (4) $2,009.40 in costs; (5) pre-judgment interest; and (6) post-judgment interest. (R&R (Dkt. No. 47) at 2, 42)

As to the Copyright Act damages, Judge Freeman finds that because the infringement was willful, Plaintiffs are entitled to the maximum statutory damage award of $150,000. (Id. at 23) As to the Lanham Act damages, Judge Freeman concludes that Section 1117(a) of the Lanham Act does not authorize a treble damages award premised on Defendant's profits. (Id. at 46) Accordingly, she recommends awarding only disgorgement of Defendant's profits. (Id.)

As to an award of attorneys' fees, Judge Freeman finds that "[b]ased on the vague, duplicative, and largely inscrutable nature of many of counsel's time entries, the extremely top-heavy manner in which this case was staffed, and the fee totals that courts in this District have typically awarded in cases involving defaults, . . . an across-the-board reduction of 60 percent of counsel's stated hours would be appropriate." (Id. at 35)

As to costs, after excluding certain cost components as vague, Judge Freeman recommends that Plaintiffs be granted $2,009.40 in costs. (Id. at 37)

As to pre-judgment interest, while the Copyright Act and Lanham Act do not expressly provide for such relief, Judge Freeman concludes that this is an "exceptional case" given Defendant's willful infringement, and that an award of pre-judgment interest is appropriate. (Id. at 38-41) Finally, Judge Freeman notes that post-judgment interest is mandatory and should be awarded. (Id. at 40)

On May 11, 2021, Plaintiffs objected to the portion of the R&R addressing their claim for $3,136,090.86 in treble damages under the Lanham Act. (Pltf. Obj. (Dkt. No. 49)) Plaintiffs contend that Judge Freeman erred in recommending that Plaintiffs' request for treble damages be denied, and that they be awarded only disgorgement of profits under the Lanham Act. (Id. at 6)

## DISCUSSION

### I. REVIEW OF A REPORT AND RECOMMENDATION

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'" Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)). A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

Where a timely objection has been made to a magistrate judge's recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'" Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (second alteration in Phillips) (quoting Vega v. Artuz, No. 97 Civ. 3775 (LTS)(JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for

clear error." IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citations omitted).

## II. COPYRIGHT ACT DAMAGES

Under the Copyright Act, a plaintiff may elect to recover an award of statutory damages for each infringed work – in lieu of an award of actual damages – "in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Where a court finds "that infringement was committed willfully, [however,] the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). "Copyright infringement is deemed willful by virtue of a defendant's default." Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015) (citing All-Star Mktg. Grp., LLC v. Media Brands Co., 775 F. Supp. 2d 613, 621-22 (S.D.N.Y. 2011); Fallaci v. New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983)); see Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc., 702 F. Supp. 2d 104, 117 (E.D.N.Y. 2010) ("By virtue of their default, defendants have admitted plaintiffs' allegation that they acted knowingly and intentionally or with reckless disregard or willful blindness to plaintiffs' rights.").

In awarding statutory damages under the Copyright Act, courts have "wide discretion," Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1116 (2d Cir. 1986), and typically consider the following factors:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir. 2010) (citing N.A.S. Import, Corp. v. Chenson Enter., Inc., 968 F.2d 250, 252-53 (2d Cir. 1992)).

In her R&R, Judge Freeman considers these factors and concludes that the maximum statutory award of $150,000 is appropriate "given Defendant's willfulness, as established by its default, as well as by its receipt of multiple notices of its infringing conduct and its repeated submission to Amazon of false counter-notices." (R&R (Dkt. No. 47) at 23)

Having considered the Bryant factors, this Court finds no error in Judge Freeman's analysis and concludes that an award of $150,000 in statutory damages is appropriate.

## III. LANHAM ACT DAMAGES

Both in the SAC and in their Proposed Findings of Fact and Conclusions of Law, Plaintiffs cite to Section 1117(a) as the basis for their Lanham Act damages. (See SAC (Dkt. No. 18) at 21; Proposed Findings (Dkt. No. 43) ¶¶ 35, 45) Under Section 1117(a), a trademark owner asserting an infringement claim may

> recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. . . .

15 U.S.C. § 1117(a).

Plaintiffs contend that under Section 1117(a), they are entitled to recover three times the amount of Defendant's sales. (Proposed Findings (Dkt. No. 43) at § III ¶¶ 38-39) Given that Defendant's sales total $1,045,363.62, Plaintiffs seek an award of $3,136,090.86 under the Lanham Act. (Id. at § III ¶¶ 41-43) Plaintiffs' request is thus premised not on their

actual damages, but rather on the sum of three times Defendant's sales, which in the circumstances here – where Defendant has defaulted – are treated as a proxy for profits.

Judge Freeman finds that Plaintiffs have "made the threshold showing of entitlement to [Shenzhen's] profits under 15 U.S.C. § 1117(a) because . . . [Shenzhen] has admitted Plaintiffs' allegations of trade-dress infringement by virtue of its default." (R&R (Dkt. No. 47) at 24) Judge Freeman also acknowledges that Plaintiffs have submitted a declaration from an Amazon employee stating that, "based on Amazon's sale records, Defendant benefitted from its infringing use of Plaintiffs' distinctive trade dress by earning $1,045,363.62 in revenue from its sales of the products at issue." (Id. at 25) Judge Freeman finds that this evidence constitutes "a reasonable estimation of Defendant's sales and (in the absence of any evidence of Defendant's deductible expenses) of its ill-gotten profits." (Id.) Judge Freeman further concludes that, because "Defendant has defaulted, Plaintiffs are entitled to recover Defendant's profits with no reductions for expenses." (Id.)

Judge Freeman rejects Plaintiffs' claim that they are entitled to an award of three times Defendant's sales, however. (Id. at 26) In so concluding, Judge Freeman cites to BeautyBank, Inc. v. Harvey Prince LLP, No. 10 Civ. 955 (DAB) (GWG), 2011 WL 671749, at *5 (S.D.N.Y. Feb. 24, 2011), report and recommendation adopted, No. 10 Civ. 955 (DAB) (GWG), 2011 WL 1483969 (S.D.N.Y. Apr. 18, 2011), a trademark infringement case in which the defendant defaulted.

The BeautyBank court held that "where a plaintiff seeks to recover the defendant's 'profits,' [Section 1117(a)] does not permit trebling." Id. In so holding, the BeautyBank court noted that Section 1117(a) explicitly authorizes the trebling of damages, but does not speak of trebling lost profits. Id.; see also U.S.A. Famous Original Ray's Licensing

Corp. v. Tisi's Pizza & Pasta Inc., No. 09 Civ. 5517 (RMB) (AJP), 2009 WL 4351962, at *4 (S.D.N.Y. Dec. 1, 2009), report and recommendation adopted, No. 09 Civ. 5517 (RMB) (AJP), 2009 WL 5178023 (S.D.N.Y. Dec. 31, 2009) ("[b]ecause § 1117(a) 'does not explicitly provide for trebling an award of defendant's profits,' but only permits trebling of plaintiff's '"actual damages,"' courts cannot treble an award of defendant's profits").

In their objection, Plaintiffs argue that Judge Freeman erred in relying on BeautyBank. According to Plaintiffs, Merck Eprova AG v. Gnosis S.P.A., 760 F.3d 247, 263 (2d Cir. 2014)), makes clear that Section 1117(a) "permits enhanced damages," including as much as three times a defendant's profits. (Pltf. Obj. (Dkt. No. 49) at 11-12) Given Plaintiffs' objection, this Court reviews de novo this portion of the R&R. See 28 U.S.C. § 636(b)(1)(C).

In Merck, plaintiff sued defendant for misleading advertising regarding defendant's B vitamin folate nutritional product, which Merck alleged was significantly less pure than Merck's competing product. According to Merck, defendant

> falsely marketed its folate product using the chemical name, abbreviation, chemical formula, and Chemical Abstracts Services registry number . . . reserved for Merck's purer folate ingredients. Merck also contends that [defendant] described its ingredient in brochures, websites, and e-mails to clients using statements that only apply to the pure product manufactured by Merck.

Merck, 901 F. Supp.2d 436, 442 (S.D.N.Y. 2012), aff'd, 760 F.3d 247 (2d Cir. 2014). Merck had developed its "substantially pure" B vitamin product at a cost of $30 million, and had spent $100 million in marketing and promoting it, to the point that the product had "become one of Merck's most important products." Id. at 446. Because defendant's substantially less pure product was "far less costly to produce," id., defendant was able to undercut Merck's pricing and capture many of its customers:

> . . . by advertising its . . . Mixture Product with terms commonly used to describe [Merck's pure product, defendant] was able to capitalize on Merck's premier position in

> the folate market – a market that Merck single-handedly created by developing the pure isomer product. By offering a product that appeared identical to Merck's [pure product], but that was far less costly due to its mixed chemical makeup, [defendant] captured many of Merck's former customers by underselling Merck. Consequently, [defendant] was able to take a significant portion of that market from Merck.

Id. at 447. The district court further noted that defendant had "continued use of the terms . . . in its advertising for almost two years after [Merck filed suit]." Id. at 458.

Based on this record, the district court concluded that Merck was "entitled to recover [defendant's] profits from its sales of [its folate product]," given the evidence that defendant had "deliberately and willfully engaged in false advertising as part of a strategy designed to gain its market share in the lucrative vitamin and nutritional supplement industry through deception." Id. But the court concluded that an award of defendant's profits was not sufficient standing alone, because of "the intangible benefits that accrued to [defendant] as a result of its false advertising, primarily [its] usurpation of Merck's market share." Id. at 460. The court further concluded that an award greater than merely defendant's profits was appropriate under Section 1117(a), because that statute authorizes a court to "enhance an award of profits without identified limit to 'such sum as the court shall find to be just' if 'the amount of the recovery based on profits is inadequate.'" Id. (quoting 15 U.S.C. § 1117(a)).

The district court determined that "the award of [defendant's] profits must be increased in order to fully compensate [plaintiff] for the improved market position [defendant] enjoyed solely as a result of its false advertising":

> At the time [defendant] entered the market, Merck was the only manufacturer of the pure S-Isomer Product. . . . [Defendant's] false advertising allowed it to enter the lucrative methyltetrahydrofolate market, meaning [that defendant's] very existence as a competitor was predicated on its misdeeds. Consequently, [defendant's] sales in that market even after it corrected is advertising – and therefore after the window for accounting – stemmed from its initial deception. Because the profits award considers only sales made during the period in which [defendant] falsely advertised, Merch has not been adequately compensated for losses incurred after the window closed. Additionally, a profits award

> alone cannot fully capture Merck's loss of market share, customer loyalty, and potential customers as a result of [defendant's] actions.

Id. The district court went on to grant an award of three times defendant's profits, noting "the impossibility of gauging Merck's losses along with the undeniable existence of those losses." Id. at 460-61.

In concluding that the district court had not abused its discretion in awarding Merck three times the defendant's profits, the Second Circuit noted defendant's "usurpation" of Merck's market share; the fact that Merck "was the only manufacturer of the . . . [p]roduct prior to [defendant's] entry into the . . . market"; and that defendant continued its false advertising for two more years after Merck filed suit. Merck, 760 F.3d at 263 (emphasis in original). While acknowledging that Section 1117(a)'s enhanced profits award language was intended to address plaintiffs who had actual damages that were difficult to prove, the court ruled that "enhanced damages may also be awarded . . . where 'deterrence of willful infringement is needed.'" Id. (quoting Getty Petroleum Corp. v. Bartco Petroleum Corp., 858 F.2d 103, 113 (2d Cir. 1988)). Finally, the Second Circuit noted that "[o]ther cases that present less egregious, willful conduct on the part of the infringing party may not warrant such an enhanced damages award." Id.

This Court concludes that Judge Freeman erred in not acknowledging that an enhanced profits award is available under Section 1117(a) under certain circumstances. But as in BeautyBank – where plaintiff likewise sought a trebled lost profits award – "no additional award is justified here . . . because [Plaintiffs have] neither argued that an award of [lost profits] would constitute an inadequate recovery pursuant [to] § 1117(a) nor provided evidence justifying an additional award." BeautyBank, 10 Civ. 955 (DAB) (GWG), 2011 WL 671749, at *4-5.

Under Section 1117(a), an enhanced profits award is appropriate only where "recovery based on profits is . . . inadequate." 15 U.S.C. § 1117(a) Here, Judge Freeman

recommends that Plaintiffs be awarded the entirety of Defendant's revenue – without any deductions for expenses. In their Proposed Findings of Fact and Conclusions of Law, Plaintiffs do not argue that such an award would be inadequate under Section 1117(a), nor have they provided evidence demonstrating that such an award would be inadequate. Instead, Plaintiffs merely argue that evidence of "willful infringement . . . warrant[s] an award of treble damages." (Proposed Findings (Dkt. No. 43) at § III ¶¶ 38-39) But as Merck demonstrates, evidence of willful infringement will not alone justify an enhanced profits award, and the facts here are not comparable to the extraordinary circumstances detailed in Merck. For example, Samsonite and Shenzhen are not direct competitors in a two-player market that Samsonite created. Instead, there are numerous competitors in the electronic carrying case market.

In sum, this Court will adopt Judge Freeman's recommendation that Plaintiffs be awarded $1,045,363.62 in damages under Section 1117(a) of the Lanham Act.

## IV. ATTORNEYS' FEES AND COSTS

Plaintiffs seek $142,387.06 in attorneys' fees and $13,543.23 in costs pursuant to the Digital Millennium Copyright Act and the Lanham Act. (Proposed Findings (Dkt. No. 43) at § IV ¶¶ 49, 51-52)

Judge Freeman recommends that this Court award $56,132.62 in attorneys' fees and $2,009.40 in costs. (R&R (Dkt. No. 30) at 35, 38) Plaintiffs do not object to this portion of the R&R.

In making these recommendations, Judge Freeman explains that while

> this case may have presented some procedural obstacles, resulting from the need to serve a foreign defendant and to translate certain documents into Chinese[,] . . . the disproportionately high number of hours [– nearly 300 –] spent on the case given its posture, combined with the Firm's top-heavy staffing (with six attorneys, yet no junior associates, and with the most senior attorneys performing the

> majority of the work), calls for a significant reduction in the fees that have been requested.

(Id. at 32)

Judge Freeman concludes that

> [b]ased on the vague, duplicative, and largely inscrutable nature of many of counsel's time entries, the extremely top-heavy manner in which this case was staffed, and the fee totals that courts in this District have typically awarded in cases involving defaults, this Court concludes that an across-the-board reduction of 60 percent of counsel's stated hours would be appropriate.

(Id. at 35)

As to costs, Judge Freeman recommends awarding "filing fees, FedEx costs, photocopies, transcripts, and PACER fees." (Id. at 38) But three cost components – "professional services," "translation services," and "library research" – are "described too vaguely to permit this Court to recommend their inclusion in a fee award." (Id. at 37) After excluding these three categories, Judge Freeman recommends granting Plaintiffs $2,009.30 in costs. (Id.)

This Court finds no error in Judge Freeman's analysis. Accordingly, this Court will award Plaintiffs $56,132.62 in attorneys' fees and $2,009.30 in costs.

## V. PRE-JUDGMENT AND POST-JUDGMENT INTEREST

Plaintiffs seek pre-judgment interest "compounded annually, to be calculated at the rate of 9% from January 1, 2018 (the first day of the year in which Plaintiffs have evidence of Defendant's infringement) until the date of entry of final judgment in this matter," as well as post-judgment interest. (Proposed Findings (Dkt. No. 43) at § II ¶ 50) Judge Freeman notes that "[a]lthough [Plaintiffs] do not provide the basis for the interest rate they request, this Court assumes that Plaintiffs are relying on the New York prejudgment interest rate, see N.Y. C.P.L.R.

§ 5004, although the New York statute does not provide for prejudgment interest to be compounded." (R&R (Dkt. No. 47 at 38)

While acknowledging that the Copyright Act and Lanham Act do not expressly provide for pre-judgment interest, Judge Freeman concludes that "the decision as to whether such interest should be awarded lies within the court's discretion." (Id. at 39 (citing Dweck v. Amadi, No. 10 Civ. 2577 (RMB) (HBP), 2011 WL 3809907, at *6 (S.D.N.Y. July 26, 2011); report and recommendation adopted, 2011 WL 3809891 (Aug. 29, 2011); John Wiley & Sons, Inc. v. Book Dog Books, LLC, 327 F. Supp. 3d 606 (S.D.N.Y. 2018))

Under the Lanham Act, pre-judgment interest "is normally reserved for exceptional cases." John Wiley & Sons, Inc., 327 F. Supp. 3d 606. "'Exceptional' circumstances, warranting a prejudgment interest award, may be demonstrated by showing that the defendant engaged in willful infringement or acted in bad faith." (R&R (Dkt. No. 47) at 40 (collecting cases))

Here, Judge Freeman finds that Defendant's copyright and trade-dress infringement were willful, and accordingly she recommends that Plaintiffs be awarded pre-judgment interest on both their Copyright Act and Lanham Act damage awards. (Id.) Because Plaintiffs' first two pleadings were never served on Defendant, Judge Freeman recommends that interest be calculated from May 7, 2019, when the SAC was filed. (Id.) Judge Freeman further recommends that pre-judgment interest be calculated at the rate provided for in 28 U.S.C. § 1961(a), compounded as set forth therein, to be calculated by the Clerk of Court, through the date of the entry of final judgment. (Id.)

As to post-judgment interest, Judge Freeman notes that this subject is "governed by 28 U.S.C. § 1961(a)," and that post-judgment interest "is mandatory on awards in civil cases,

from the date of entry of the judgment to the date when the judgment is satisfied." (Id.) As such, Judge Freeman "recommend[s] that the judgment simply reference Plaintiffs' entitlement to such interest, pursuant to the terms of 28 U.S.C. § 1961(a)." (Id. at 41)

This Court adopts Judge Freeman's recommendation that Plaintiffs be awarded pre-judgment and post-judgment interest.

## VI. POST-JUDGMENT DISCOVERY

Plaintiffs request that this Court order post-judgment discovery, because "[n]onparties are likely to have information concerning the location of Defendant's assets which could aid in satisfying a judgment." (Proposed Findings (Dkt. No. 43) at § II ¶¶ 59-60)

Judge Freeman states that

> [w]hile it may well be that post-judgment discovery would assist Plaintiffs in enforcing a judgment in this case, this Court sees no reason why the Court need act, at this time, to order any such discovery. "Discovery of a judgment debtor's assets is conducted routinely under the Federal Rules of Civil Procedure," First City, Texas-Houston, N.A. v. Rafidain Bank, 281 F.3d 48, 54 (2d Cir. 2002), and Rule 69, which governs post-judgment discovery, allows a judgment creditor to engage in such discovery without express leave of court, see Fed. R. Civ. P. 69(a)(2) ("In aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person – including the judgment debtor – as provided in these rules or by the procedure of the state where the court is located."). Indeed, Rule 69 has been interpreted to permit judgment creditors "wide latitude in using the discovery devices provided by the Federal Rules in postjudgment proceedings." Gibbons v. Smith, No. 01cv1224 (LAP), 2010 WL 582354, at *3 (S.D.N.Y. Feb. 11, 2010) (citing Fed. R. Civ. P. 69(a)(2)). As set out in Rule 69, a judgment creditor may also utilize any discovery procedures that are authorized by the forum state, in aid of execution of the judgment. Fed. R. Civ. P. 69(a)(2) . . . .
>
> If Plaintiffs serve appropriate post-judgment discovery requests under Rule 69 and are met with resistance, then they may move to compel responses. See, e.g., Servaas Inc. v. Republic of Iraq, No. 09cv1862 (RMB), 2013 WL 5913363 (S.D.N.Y. Nov. 4, 2013). At this time, however, I recommend that the Court decline to issue any order regarding post-judgment discovery.

The Court finds no error in Judge Freeman's analysis. As such, Plaintiffs' request for post-judgment discovery is denied.

**CONCLUSION**

The R&R is adopted as set forth above. Plaintiffs are awarded: (1) $1,195,363.62 in damages, consisting of $150,000 in Copyright Act statutory damages and $1,045,363.62 pursuant to the Lanham Act; (2) pre-judgment interest on damages, calculated by the Clerk of Court, at the rate set out in 28 U.S.C. 1961(a), for the period from May 7, 2019, to December 20, 2023; (3) $56,132.62 in attorneys' fees; and (4) $2,009.40 in costs. Post-judgment interest on the entire amount will accrue from the date of judgment at the rate provided by 28 U.S.C. § 1961(a). The Clerk of Court is directed to enter judgment and to close this case.

Dated: New York, New York
December 20, 2023

SO ORDERED.

Paul G. Gardephe
United States District Judge